No. 13670

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

Re
IN /THE MARRIAGE OF
KANDIS TWEETEN,

                    Petitioner and Appellant,

        -vs-

HENRY TWEETEN,

                    Respondent and Respondent.


Appeal from:   District Court of the Twelfth Judicial
               District,
               Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

      Smith, Emmons, Baillie and Walsh, Great Falls, Montana
      Robert J. Emmons argued, Great Falls, Montana

For Respondent:

      Hauge, Ober, Spangelo and Thompson, Havre, Montana
      Morton B. Goldstein argued, Havre, Montana


                              Submitted:  March 2, 1977

                              Decided:   MAY - 4 1977

Filed:  MAY - 4 1977


*Thomas J. Kearney*
                              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Petitioner Kandis Tweeten brought an action in the district court, Hill County, seeking (1) the dissolution of her marriage to Henry Tweeten, (2) a property settlement, and (3) custody of the parties' 3 year old child, Kevin. In its order of December 7, 1976, the district court dissolved the marriage, ordered a property settlement and found that both parties were fit and proper persons to have custody of Kevin. The court awarded custody of the child to Henry:

> "Because of the close and warm relationship of Kevin
> with his father and the greater maturity and stability
> which the father possesses and can offer as a parent,
> the Court finds that it is in the best interest of Kevin
> that he be placed in the general care, custody and control
> of his father * * *."

Kandis appeals from the decree only insofar as it awards custody of Kevin to Henry.

Kandis and Henry Tweeten were married in Havre, Montana, August 19, 1972. Kevin was born October 25, 1973 and is the sole issue of the marriage. Kandis and Henry separated the first week of June 1976, and from that date until trial on November 18, Kevin resided with his mother. During this period however, Kevin spent at least two days per week in the company of his father.

Eighteen witnesses were called at the two day nonjury trial. Testimony was heard from a welfare worker employed by the Hill County Welfare Department who conducted a child custody investigation. The result of this investigation was a recommendation that the father be awarded custody of Kevin. Testimony was also

heard from Dr. Betsy Rushworth, a clinical phychologist. Dr. Rushworth conducted a mental health evaluation of Kevin and his parents. The result of this evaluation was inconclusive indicating that Henry and Kevin had a warm and loving relationship, but Henry tended to be overpermissive with Kevin. On the other hand, the evaluation indicated that Kandis exhibited some deficiencies in her dealings with Kevin, but was making a concerted effort to improve. The testimony of Kandis and Henry along with members of their immediate families and close friends was considered by the district court in its decision.

On December 8, the district court granted a stay of execution as to custody extending the temporary custody of Kevin in his mother, with visitation rights to Henry pending this appeal.

The sole issue upon appeal is whether the district court erred in awarding the custody of Kevin to Henry rather than his mother, Kandis.

This Court has long followed the rule that unless there is a clear abuse of discretion by the trial court, a decision on custody will not be overruled on appeal. Love v. Love, 166 Mont. 303, 533 P.2d 280; Gilmore v. Gilmore, 166 Mont. 47, 530 P.2d 480; Anderson v. Anderson, 145 Mont. 244, 400 P.2d 632. This Court is committed to the view that the welfare of the child is the paramount consideration in awarding custody and that it must of necessity be left largely to the discretion of the trial judge. He hears the testimony, sees the witnesses demeanor, and thus has a superior advantage in determining the difficult problems. Brooks v. Brooks, _____Mont._____, 556 P.2d 901, 33 St.Rep. 1114. Unless there is a clear preponderance of the evidence against the trial court's decision it will not be disturbed. Gilmore v. Gilmore, supra.

The relevant statutory guidelines dealing with child custody matters appear in section 48-332, R.C.M. 1947, of the recently adopted Uniform Marriage and Divorce Act. This section states:

"Best interest of child. The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

"(1)   the wishes of the child's parent or parents as to his custody;

"(2)   the wishes of the child as to his custodian;

"(3)   the interaction and interrelationship of the child with his parent or parents, his siblings,and any other person who may significantly affect the child's best interest;

"(4)   the child's adjustment to his home, school, and community; and

"(5)   the mental and physical health of all individuals involved."

Kandis asserts the district court erred in awarding the custody of Kevin to Henry. After careful consideration of the factors listed in section 48-332, the district court found and we agree, that the evidence indicated the awarding of Kevin's custody to his father was in the child's best interest.

This Court feels the first two of the stated factors are not of controlling importance in this custody decision. Both parents testified as to their desire to have custody of Kevin. It is obvious where both parents desire custody of the child this factor loses its relevance as the desires of the parents are balanced against each other. In this regard it is important to remember the best interest of the parent, or detriment to the parent, is not the test. Veazey v. Veazey, Alaska 1977, 560 P. 2d 382. Too, Kevin was approximately 3 years, 1 month old at the time of the trial. See: Hild v. Hild, 221 Md. 349, 157 A.2d 442. We find no error in the district court's failure to interview Kevin as to his preference.

- 4 -

As to the third factor, interaction of the child to his parents, the evidence is clear Kevin has a far better relationship with his father than his mother. Henry and Kevin have an excellent relationship as testified to by the welfare worker who recommended that custody be awarded to Henry, and Dr. Rushworth, the examining clinical psychologist. This Court and other courts have previously held that independent evaluations by social or welfare departments are important factors to be considered in child custody decisions. Simon v. Simon, 154 Mont. 193, 461 P.2d 851. Furthermore, there was considerable testimony from the parties' families and friends as to Henry's love and affection, and concern for his son Kevin.

An analysis of the fourth factor, adjustment to home, school, and community, again reinforces the district court's decision. The record is clear that Henry has been the dominant force in providing for the education and religious training of Kevin. Henry spends a great deal of time out in the community with Kevin and the record reflects that these efforts have resulted in Kevin making a good adjustment to his community and environment in spite of the unsettled state of his short life.

We take this opportunity to clarify one point in this Court's recent decision in Gilbert v. Gilbert, 166 Mont. 312, 316, 533 P.2d 1079. In Gilbert, the father petitoned the district court for a change of custody from the mother. The trial court denied the father's petition because he found no material change of circumstances warranting a modification of the decree. The record before this Court showed that after one year under the original custody agreement the child became emotionally ill.

- 5 -

Both parties recognized that fact and because the father lived in a university town where consultation with professional help was available and where the child could attend a child development center, he took custody of the child. Some months later the mother tried to get her child back and the father refused. In view of the facts, this Court found that there had been a change of circumstances and it was in the child's best interest to remain with the father, the Court noted:

> "Physical custody of this child in its present environment is a fact and has been for a long period of time, when viewed in the light of the formative years of a four year old child at the time she came into the present environment after an unsuccessful one year from age three to four years in the first agreed custody arrangement."

While the time period a child spends with a parent pending an appeal of a custody case is a factor to be considered by a trial court, it should not be so controlling as to negate a parent's right of appeal.

Here, the record reveals Kevin becomes withdrawn when in the company of his mother, but on the other hand is happy and outgoing with his father. While there is no indication of mental or physical illness on Kevin's part, the court found the best interests of Kevin dictate that Henry be awarded custody.

Kandis argues that, even though section 91-4515, R.C.M. 1947, was superseded by the Uniform Marriage and Divorce Act and the statutory "tender years" presumption found therein no longer exists, the universal rule is that this presumption is still conclusive in custody matters. Kandis would have us believe the district court erred in not indulging the presumption that a mother is better fit to have custody of a child of tender years. We agree such a presumption exists, but do not find it to

be conclusive. In this jurisdiction each child custody case will be decided on its own facts rather than by the use of "controlling or conclusive" presumption. This rule is well established in other jurisdictions which have adopted the Uniform Marriage and Divorce Act. See: Johnson v. Johnson, Mo.App. 1975, 526 S.W.2d 33; R.-G.-T. v. Y.-G.-T., Mo.App.1976, 543 S.W.2d 330; Eviston v. Eviston, Ky.App. 1974, 507 S.W.2d 153.

We affirm the district court decree in its entirety.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.