No. 12814

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

LOUIS MOHR HAABY,

> Plaintiff and Appellant,

-vs-

EARL STANLEY HAABY,

> Defendant and Respondent.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable R. J. Nelson, Judge presiding.

Counsel of Record:

For Appellant:

Church, Harris, Johnson & Williams, Great Falls,
Montana
Cresap S. McCracken, argued, Great Falls, Montana

For Respondent:

John McCarvel argued, Great Falls, Montana

---

Submitted: November 18, 1974

Decided: DEC 3 0 1974

Filed: DEC 3 0 1974

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from the district court, Cascade County. The record discloses the parties were divorced on March 24, 1969. Pursuant to the divorce decree Earl Stanley Haaby was ordered to pay $100 per month in child support for each of his two minor daughters (then aged 17 and 12) as long as they were minors or enrolled in school. A house jointly owned by the parties was to be placed on the market for sale immediately. Louise Mohr Haaby was allowed to reside in the house, and Earl was ordered to make the house payments of $183 per month until it was sold. The parties were to share equally in the net equity.

Since the divorce Earl has made the house payments every month thereby reducing the mortgage balance from $12,344.16 to $9,038.36 as of April 12, 1974. The house remains unsold. Earl has also paid $600 for the support of his two daughters. However, according to the terms of the divorce decree, a total of $7,000 in child support should have been paid from the time of the decree of divorce to the filing of the petition which led to this suit.

On April 16, 1974, Earl petitioned the district court of Cascade County for an order establishing satisfaction of the divorce decree. Louise's response put satisfaction of that decree in issue and sought an order requiring payment of unpaid child support. Hearing on the matter was held on May 2, 1974, with Earl being the only witness. He testified there was an understanding between the parties that since the house was not sold right away house payments would be made in lieu of the child support payments; but admitted there had never been any formal agreement to that effect. On May 7, 1974 the district court entered an order which, among other things, granted Earl's petition The reasons for this order were: (1) the house had not been sold immediately,

- 2 -

as the divorce decree had provided, and (2) the actions of both parties during the five years since the divorce had, in fact, already amended the decree. From this order appeal is taken.

The rule that the findings of the district court will not be disturbed absent substantial credible evidence to the contrary is so well established that it requires no recitation of authority. In the instant case, we find little, if any, contrary credible evidence; indeed, appellant appears to have reaped far more benefit from the house payments than she bargained for under the divorce decree. Had the decree been rigidly observed, appellant would have received approximately $7,000 in child support payments, plus at most $1,200 for six months use of the house (which had a rental value of $200 per month) plus her share of the net equity after the house was sold. As it turned out, appellant received $600 in child support plus $10,800 for the use of the house for an "additional" four and one-half years. Meanwhile, her share of the net equity has increased by over $1,600 on account of the mortgage reduction, to say nothing of the recent general increase in property values. To accept appellant's proposition that respondent was obligated to pay both child support and house payments during the entire period in question would be to read into the divorce decree an onerous burden it plainly never contemplated.

Appellant next points out that, aside from the initial $600 payment for child support, respondent has really only "paid" $91.50 per month since the divorce, on the theory that half of the $183 monthly house payments accrued to his benefit and, furthermore, respondent has realized the resultant income tax advantages. Apparently the implication to be drawn is that this somehow makes respondent delinquent under the divorce decree because his pocket book was not hit quite as hard as originally

thought.

This contention, of course, is every bit as tenuous as it sounds: First, as the district court recognized, it is elementary that the person who makes house payments is, without more, entitled to any tax benefits flowing therefrom. Second, simple arithmetic demonstrates that appellant was hardly shortchanged in receiving house payments instead of child support. Finally, appellant's line of reasoning overlooks the main purpose of the divorce decree--financial protection of appellant and her daughters. Whether or not economic advantages accrued to respondent by virtue of making the payments he made is immaterial as long as the objective of protection was satisfactorily achieved. The district court, after considering respondent's faithfulness in making the house payments and appellant's apparent contentment with the situation for five years, concluded the whole arrangement was eminently fair. We agree. It is simply a matter of stripping away the form to get at the substance.

The district court's order is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 4 -